IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CARL WOODARD, SR., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v | ) Cause No. 3:08-734-JPG-PMF |
| | ) |
| METROPOLITAN LIFE INSURANCE | ) |
| COMPANY, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM AND ORDER**

This matter comes before the Court on plaintiff Carl Woodard Sr.'s motion for attorney's fees (Doc. 33) pursuant to § 502(g)(1) of the Employee Retirement Income Security Act, 29 U.S.C. § 1132(g)(1). Defendant Metropolitan Life Insurance Company ("MetLife") has responded to the motion (Doc. 37).

**I.     Background**

This dispute began when Woodard filed a claim for disability insurance benefits under a long term disability ("LTD") insurance plan offered by his employer and operated by MetLife. The LTD plan's summary plan description defines disability as follows:

> Disabled or disability means that due to sickness, pregnancy or accidental injury, you are receiving appropriate care and treatment from a doctor on a continuing basis; **and**
>
> •    During your elimination period and the next 24-month period, you are unable to perform the material duties of your regular job with the employer and unable to earn more than 80 percent of your pre-disability earnings or indexed pre-disability earnings; **or**
>
> •    After the 24-month period, you are unable to earn more than 60 percent of you [*sic*] indexed pre-disability earnings from any employer in your local economy at any gainful occupation for which you are reasonably qualified taking into account your training, education, experience and pre-disability earnings.

Summary Plan Description at 23, Compl. Ex 1. The claimant has the burden of providing information to demonstrate he is disabled under this definition. Summary Plan Description at 10, Def. Resp. M. Fees Ex. A.

Woodard stopped working on October 20, 2006, and filed a claim for LTD benefits in June 2007 based on a back injury from December 2005 (spinal stenosis following a lumbosacral fusion). On October 7, 2007, the Social Security Administration awarded Woodard monthly disability benefits as of April 2007.

MetLife, on the other hand, denied Woodard's claim for LTD benefits on November 5, 2007, finding that the medical information Woodard had submitted did not support the finding that he had a functional impairment that prevented him from performing his job during the entire period for which he sought benefits. The denial letter specifically referenced statements, notes and reports from Dr. Hoffman from the period of August 6 to December 4, 2006 and the fact that MetLife had confirmed with Dr. Hoffman's office that Woodard had not been seen since December 4, 2006. The record indicates MetLife called Woodard in October 2007 to request he submit additional medical information beyond December 2006, but Woodard had not provided any additional medical records other than an August 2007 report from Dr. Hoffman based on his 2006 treatment. MetLife construed this to mean Woodard was no longer under Dr. Hoffman's or any other medical provider's treatment and therefore did not qualify for LTD benefits that were only awardable to participants who "are receiving appropriate care and treatment from a doctor on a continuing basis." The denial letter further informed Woodard that medical information was needed from his last date worked (October 20, 2006) to the present to support a claim for disability benefits, and that he had only submitted medical information to December 4, 2006. Finally, the letter set forth Woodard's right to reconsideration of the decision should he be able to provide documentation of disability from October 2006 to the present and his right to file an administrative appeal challenging the denial of benefits with additional supporting documentation of disability. The denial, of course, only

addressed the first category of disability – whether Woodard could perform his own job during the elimination period and the next 24 months ("own occupation" disability). The second category ("any occupation" disability) was not addressed because Woodard was not eligible for such benefits until after the 24-month period. Woodard appealed MetLife's denial.

On January 9, 2008, MetLife denied Woodard's administrative appeal. In Woodard's appeal, he told MetLife that his employer agreed in October 2006 that he did not need to send in any more medical information because his condition would not improve. Woodard also informed MetLife he had been under the treatment of Dr. Burch, Dr. Klein and Dr. Dirkers but only submitted medical records from Dr. Burch. MetLife stated that it had obtained an independent medical neurosurgeon consultant to review Woodard's file, including the new information from Dr. Burch. The reviewer noted that Woodard had not followed up on Dr. Hoffman's suggestion of surgery and weight loss and instead pursued pain management and physical therapy from Dr. Burch. Dr. Burch noted Woodard showed a 50% to 99% improvement in April 2007. The reviewer concluded that Woodard's files did not support a finding that he had a functional limitation that prevented him from performing his regular job after October 23, 2007. Although given the opportunity, Drs. Hoffman and Klein (Dr. Burch had since retired) did not comment on the reviewer's report.

Woodard filed this lawsuit in October 2008 claiming benefits under § 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B). He alleged MetLife's decision to deny him benefits was arbitrary and capricious. On April 17, 2009, the parties reached a settlement in which Woodard obtained some benefits but less than he had demanded prior to the settlement. He also retains an opportunity to apply for "any occupation" disability in the future. The parties did not agree, however, whether an attorney's fee award was warranted. That dispute is brought before the Court in the pending motion.

## II. Analysis

ERISA provides, "In any action under this subchapter . . . by a participant [or] beneficiary . . ., the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1). As the statute indicates, a fee award to a prevailing party is discretionary, not mandatory, and is only warranted if the non-prevailing party's litigation position was not "substantially justified." *Lowe v. McGraw-Hill Cos.*, 361 F.3d 335, 339 (7th Cir. 2004) (citing *Bittner v. Sadoff & Rudoy Indus.*, 728 F.2d 820, 830 (7th Cir. 1984)).[1] There is a modest but rebuttable presumption that a prevailing party is entitled to attorney's fees. *Stark v. PPM Am., Inc.*, 354 F.3d 666, 673 (7th Cir. 2004).

It is often difficult to determine whether a settling party is a "prevailing party" for purposes of a suit for benefits under § 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B). This is because parties may choose to settle for a variety of reasons, none of which have to do with the merits of the case or justify an award of attorney's fees. For example, parties may settle to avoid a nuisance or for wholly gratuitous reasons. *Hooper v. Demco, Inc.*, 37 F.3d 287, 292 (7th Cir. 1994). The Seventh Circuit Court of Appeals has held that a settling plaintiff is considered a "prevailing party" under ERISA if two conditions are met. The first is that "the outcome of the plaintiff's lawsuit [is] causally linked to the achievement of the relief

---

[1]Courts have also articulated a five-factor test:

> 1) [T]he degree of the offending parties' culpability or bad faith; 2) the degree of the ability of the offending parties to satisfy personally an award of attorney's fees; 3) whether or not an award of attorney's fees against the offending parties would deter other persons acting under similar circumstances; 4) the amount of benefit conferred on members of the pension plan as a whole; and 5) the relative merits of the parties' positions.

*Quinn v. Blue Cross & Blue Shield Ass'n*, 161 F.3d 472, 478 (7th Cir. 1998) (pension plan context). However, as the Seventh Circuit Court of Appeals recognized in *Bowerman v. Wal-Mart Stores, Inc.*, 226 F.3d 574, 592-93 (7th Cir. 2000), the five-factor test only facilitates the ultimate inquiry whether the non-prevailing party's position was substantially justified. *Lowe*, 361 F.3d at 339; *see Sullivan v. William A. Randolph, Inc.*, 504 F.3d 665, 672 (7th Cir. 2007) (questioning whether the five-factor test has "outlived its usefulness" in light of the simpler test of substantial justification).

obtained," that is, the suit played a "provocative role" or was a catalyst in obtaining relief. *Id.* A settlement reached soon after a lawsuit is filed is evidence that the suit may be causally connected to the relief obtained. *See, e.g., id.* at 293 ("In light of the close proximity of time between the filing of the suit and settlement (two weeks), the suit seems to have acted as a 'catalyst' for the settlement and thus satisfies the causal link requirement."). The second requirement is that "the suit must have prompted the defendant (the settling party) to act or cease its behavior based on the strength of the case, not 'wholly gratuitously' in response to the plaintiff's claims." *Id.*

Woodard seeks a fee award as a prevailing party whose opponent's position was not substantially justified. MetLife argues that Woodard is not entitled to an award of attorney's fees because he was not a prevailing party in the settlement of this suit and because its initial decision to deny Woodard benefits was substantially justified. Alternatively, MetLife argues that should the Court find a fee award appropriate, the amounts requested by Woodard are unreasonable.

### A. Prevailing Party Status

MetLife argues Woodard is not a prevailing party because he only obtained relief under the "own occupation" LTD plan provision, less than he initially sought in this lawsuit. Nevertheless, Woodard did obtain substantial relief, and this lawsuit was causally linked to that relief. The record demonstrates that MetLife was unwilling to provide disability benefits before the suit was filed and that it changed its mind within six months after the suit was filed. This temporal proximity is sufficient to create a causal inference.

The second element of the "prevailing party" test – non-gratuitous relief – is not as clear. Woodard completely fails to address this element of the test in his briefing, while MetLife baldly asserts it settled the case for nuisance value and not because Woodard's case had any value. However, the Court need not determine whether Woodard is technically a "prevailing party" because, even if he were, he would not be entitled to attorney's fees because MetLife's position was substantially justified.

5

B.  Substantial Justification for MetLife's Position

Woodard argues MetLife was not substantially justified in its refusal to grant disability benefits in light of the evidence in the record that (1) Dr. Hoffman told MetLife Woodard was totally disabled and would never return to work, (2) Dr. Dirkers, Woodard's employer's company doctor, would not permit Woodard to return to work and believed Woodard could not do his own job, (3) the Social Security Administration found Woodard totally disabled, (4) no independent medical exam was performed assessing Woodard's condition and (5) no functional capacity exam was performed to assess Woodard's abilities. MetLife maintains that, based on the evidence actually in its file when it decided to deny Woodard's claim, its position was substantially justified.

Notwithstanding the modest presumption that Woodard is entitled to attorney's fees that would exist if he were found to be a prevailing party, MetLife has rebutted such a presumption with evidence it was substantially justified in rejecting Woodard's claim for disability benefits.

1.  Initial Decision

MetLife's original decision to deny disability benefits was justified by the fact that the record before MetLife in November 2007 showed Woodard had not been treated for his back problems since December 2006, nearly a year before the decision to deny benefits. MetLife's decision was substantially justified where benefits were only awardable to claimants who were receiving treatment on a continuing basis. Before it reached its decision, MetLife had requested from Woodard further medical documentation of continuing treatment subsequent to his treatment from Dr. Hoffman. No further information was forthcoming by the deadline MetLife gave, so it appeared to MetLife that Woodard was not under continuing treatment at the time. It was perfectly reasonable then for MetLife to deny disability benefits for the reasons stated in its denial letter.

That Dr. Hoffman indicated in an August 2007 report that Woodard was totally disabled and would never work again is not relevant to the critical inquiry for MetLife's decision – whether Woodard

was receiving treatment *on a continuing basis*. Similarly, neither the Social Security disability determination, the fact that Dr. Dirkers, Woodard's employer's company doctor, also would not allow Woodard to return to work, nor the lack of an independent medical exam or functional capacity exam was evidence of treatment on a continuing basis.

    2.    <u>Final Decision</u>

As for MetLife's final decision – the denial of Woodard's appeal – that too was substantially justified, although it was grounded in a different rationale – that Woodard was not unable to perform the material duties of his regular job. By that time, Woodard had informed MetLife that his employer had told him he no longer needed to submit medical documentation of his disability and that he had also been seen by Drs. Burch, Klein and Dirkers subsequent to his treatment by Dr. Hoffman. MetLife reviewed the medical information it was provided from Dr. Burch (Woodard did not provide any from Drs. Klein or Dirkers) and obtained an opinion of a consulting physician, who opined that the records reflected Woodard had potential for significant improvement without surgery and did not support an inability to do his regular job. The consultant's conclusion was based primarily on statements in Woodard's medical records that he had experienced a 50% to 99% improvement in April 2007 as a result of pain management and physical therapy from Dr. Burch. Neither Drs. Hoffman nor Klein (who began treating Woodard when Dr. Burch retired) contradicted the consultant's conclusions when given the opportunity. Therefore, the record before MetLife at the time it denied Woodard's appeal indicated Woodard was not "unable to perform the material duties of [his] job," as required by the LTD plan before benefits could be awarded. MetLife's decision to affirm the denial of benefits on that basis was substantially justified in light of the record before it at the time.

Again, Dr. Hoffman's August 2007 report based on his 2006 treatment of Woodard could not have taken into account Woodard's later improvements under Dr. Burch's care. MetLife was reasonable to

give more weight to the most recent medical information, and that weighing decision did not render MetLife's January 2008 decision unjustified.[2]

Woodard argues MetLife's decision was not substantially justified because it ignored Dr. Dirkers' refusal to allow him to return to work. However, the parties have not pointed to any medical records from Dr. Dirkers in the administrative record before MetLife at the time of its decision. Thus, MetLife cannot be faulted for failing to take such information into account in denying Woodard's LTD benefit claim.

Woodard also faults MetLife for failing to defer to the Social Security Administration's finding that Woodard was disabled. However, while it may be a relevant consideration, a Social Security benefit determination is not controlling for private LTD benefit claims. *See Williams v. Aetna Life Ins. Co.*, 509 F.3d 317, 326 (7th Cir. 2007) (noting that Social Security claim requirements do not always mirror those for ERISA benefit claims). In the present case, MetLife's failure to give greater weight – or indeed any weight, for MetLife did not mention Woodard's Social Security disability finding – to a Social Security decision in light of the administrative record before it does not prevent MetLife's decision from being substantially justified.

As for MetLife's failure to obtain an independent medical exam or a functional capacity exam, while such steps might have been advisable, the LTD plan did not require MetLife to seek out such information. The burden rested on Woodard to obtain sufficient evidence of his disability. That MetLife

---

[2]In its brief, MetLife notes Dr. Hoffman's opinion of Woodard's continuing disability is not supported by objective evidence. However, MetLife's letters denying Woodard's claim and appeal do not reflect this as a basis for discounting Dr. Hoffman's conclusion. They rely solely on the limited time frame in which Dr. Hoffman treated Woodard and improvements that occurred after that time frame. This may indicate that the lack of objective evidence is a *post hoc* justification for MetLife's decision, and the Court will not consider the lack of objective evidence to support Dr. Hoffman's conclusion as a justification for MetLife's final decision.
 Similarly, MetLife cites Woodard's normal lab test results and physician notes that Woodard was doing well. To the extent these factors are not reflected in the denial letters, the Court will not consider them in determining whether MetLife's final decision was substantially justified.

8

deemed he had failed to carry this burden was substantially justified in light of the administrative record before it at the time.

## III. Conclusion

In sum, MetLife's decision bears no indications of bad faith or an intent to harass Woodard by denying his LTD benefit claim. On the contrary, MetLife alerted Woodard to the shortcomings in his claim file, gave him an opportunity to correct them, considered the additional medical information he provided and reached a final decision that was substantially justified in light of the evidence before it at the time. In light of this conclusion, the Court need not determine whether the fees requested by Woodard are reasonable.

For the foregoing reasons, the Court **DENIES** Woodard's motion for attorney's fees (Doc. 32) and **DIRECTS** the Clerk of Court to enter judgment of dismissal with prejudice and without costs.

**IT IS SO ORDERED.**
**DATED:  July 21, 2009**

                                                  s/ J. Phil Gilbert
                                                  **J. PHIL GILBERT**
                                                  **U.S. DISTRICT COURT JUDGE**